IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

SHAMEKA LASHAY WRIGHT                                                                    PLAINTIFF

v.                                            Case No. 4:19-cv-4051

ANDREW SAUL
Commissioner, Social Security Administration                                             DEFENDANT

# ORDER

The Court has received a report and recommendation (ECF No. 18) from United States Magistrate Judge Barry A. Bryant regarding Plaintiff's request for judicial review of the Social Security Administrative Law Judge's ("ALJ") determination that Plaintiff is not entitled to disability insurance benefits and supplemental security income. Judge Bryant recommends that the Court affirm the decision of the ALJ. Plaintiff has filed objections. ECF No. 19. In light of the objections, the Court has undertaken a *de novo* review of the record, and after doing so, finds that the objections offer neither fact nor law that would justify deviating from Judge Bryant's recommendation.

## I.  LEGAL STANDARD

In reviewing a decision of an ALJ, the Court must determine if the decision is supported by substantial evidence in the record. *Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997); *see also* 42 U.S.C. § 405(g) (2017). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion." *Johnson v. Apfel*, 240 F.3d 145, 1147 (8th Cir. 2001). If substantial evidence supports the ALJ's conclusion, the Court cannot reverse simply because substantial evidence also supports a different outcome. *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010); *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).

Essentially, if "after reviewing the record, the court finds that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Goff v. Barnhart*, 421 F.3d 785, 790-91 (8th Cir. 2005).

The Commissioner of Social Security's "regulations governing determinations of disability set forth a five-step sequential evaluation process which the Commissioner must use in assessing disability claims." *Goff v. Barnhart*, 421 F.3d at 789-90.

> During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings,[1] (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004). "If a claimant fails to meet the criteria at any step in the evaluation of a disability, the process ends and the claimant is determined to be not disabled." *Id.*

## II.  PLAINTIFF'S OBJECTIONS

At step two of the sequential evaluation process, the ALJ found that Plaintiff's severe impairments included tension and migraine headaches, hypertension, cardiac murmurs, and obesity.  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirement of any Social Security Income listing.  The ALJ expressly addressed listings "outlined in Section 4.00 (Cardiovascular System)."  At issue is whether the ALJ erred by not expressly addressing whether Plaintiff's tension and migraine headaches meet the criteria of Listing 11.02.

---

[1] The listings, found in 20 C.F.R. Part 404, Subpart P, Appendix 1, delineate impairments considered "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a) and 416.925(a).  If an impairment meets or equals a listing, the claimant will be considered disabled without further inquiry." *Bartlett v. Heckler*, 777 F.2d 1318, 1320 n.2 (8th Cir. 1985).

Judge Bryant concluded that Plaintiff did not meet her burden of establishing that her headaches equal either Listing 11.02B or 11.02D regarding seizures, which is the most closely analogous listing for severe chronic migraines. Plaintiff objects to this conclusion and argues that the ALJ erred by failing to expressly analyze whether her migraines were medically equivalent to Listing 11.02. Plaintiff contends that this failure deprives the Court of the ability to determine the rationale behind the ALJ's ruling, and thus the ability to conduct an effective review.

"Although it is preferable that ALJs address a specific listing, failure to do so is not reversible error if the record supports the overall conclusion." *Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003); *Briggs v. Callahan*, 139 F.3d 606, 609 (8th Cir. 1998) (stating that "although the ALJ did not specifically discuss [the] condition in the context of listing 112.05(D)," the record supported the conclusion). Plaintiff has the burden of proving that her impairment meets or equals a listing.[2] *Carson v. Astrue*, 604 F.3d 589, 594 (8th Cir. 2010). To establish equivalency, Plaintiff must "present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Id*. The severity standards for listing-level impairments are high, because "the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).

Social Security Ruling 19-4p provides guidance regarding how to evaluate whether a headache disorder medically equals Listing 11.02:

> Epilepsy (listing 11.02) is the most closely analogous listed impairment for an MDI [medically determinable impairment] of a primary headache disorder. While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her MDI(s) medically equals the listing.
>
> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at

---

[2] There is no listing that pertains specifically to migraine headaches, and thus Plaintiff's migraine headaches cannot "meet" a listing.

> least once a week for at least 3 consecutive months despite adherence to prescribed treatment. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description from an AMS of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).
>
> Paragraph D of listing 11.02 requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02D, we consider the same factors we consider for 11.02B and we also consider whether the overall effects of the primary headache disorder on functioning results in marked limitation in: Physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing pace; or adapting or managing oneself.

2019 WL 4169635, at *7.

In February 2010, Plaintiff complained of chronic headaches that persisted despite medications like Topamax, Inderal, and Motrin. (Tr. 582).[3] In July 2010, Plaintiff again reported chronic headaches that persisted despite medication management. (Tr. 576). In August 2011, Plaintiff estimated having one headache every other week and taking four days to recover. (Tr. 573). Plaintiff continued to report migraine headaches in examinations held in August 2011, August 2012, November 2012, and February 2013. In a February 2013 examination, she described the pain as a nine out of ten in intensity. Plaintiff reported a sensitivity to light and sound and nausea. (Tr. 321).

---

[3] The Court will use this citation form to refer to the Social Security transcript filed as ECF No. 11. All page numbers refer to the transcript page numbers found in the lower right corner of the documents.

In July 2015, Plaintiff underwent a magnetic resonance imaging (MRI), which established that Plaintiff had no brain defects or abnormalities to explain her migraines. (Tr. 499). Plaintiff again reported headaches in examinations held in September 2015, June 2016, and September 2016. (Tr. 669-675). In June and September 2016, Dr. Pace opined that Plaintiff's headaches were likely tension headaches and prescribed Fioricet. (Tr. 672, 674). A March 2017 form from Wadley Rural Health indicated that Plaintiff had not been diagnosed with migraine headaches. (Tr. 685-686). In July 2017, Plaintiff reported a migraine headache and stated that she got severe headaches around four times a year. She stated that she got milder headaches about once a week. (Tr. 732). In September 2017, Plaintiff reported that the Fioricet helped with her occasional headaches. (Tr. 752). In May 2018, she again reported chronic headaches. Per Plaintiff's request, her treating physician, Dr. Philip Pace, referred her to a neurologist for testing. However, Dr. Pace noted that he never witnessed or observed a severe migraine in Plaintiff and did not believe that her tension headaches were of a migraine nature. (Tr. 744).

The record contains abundant evidence that Plaintiff suffers from headaches, although it is not clear whether these are migraine or tension headaches or both. The record also contains evidence that Plaintiff's headaches were sometimes responsive to treatment but at times were quite severe. Plaintiff's treating physician opined several times that the headaches were tension headaches. When Plaintiff reported headaches, other health problems were usually reported, such as hypertension, that could likely cause the headaches.

The ALJ recognized that Plaintiff frequently suffered from "chronic migraine headaches" that made her sensitive to light and distractible. (Tr. 10).[4] The ALJ also noted, however, that

---

[4] In determining Plaintiff's residual functional capacity, the ALJ discussed the history and frequency of Plaintiff's migraines, the history and results of her treatment for migraines, and some of the limitations allegedly caused by migraines. This discussion helps to inform the Court as to why the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirement of any Social Security Income listing.

"even with the migraines, she can understand, remember, and carryout simple [two-to-three-step] tasks," "make simple routine decisions," and "adapt to routine workplace changes." (Tr. 10). The ALJ further noted that Plaintiff "retained some ability to successfully tend to her personal hygiene needs, prepare meals, complete household chores, shop, and drive." (Tr. 9). The ALJ considered the opinion of Plaintiff's treating physician, which was that Plaintiff suffered from tension headaches not migraines, and the ALJ noted that Plaintiff was hypertensive during some of the examinations where she complained of headaches. (Tr.9-10). The ALJ concluded that Plaintiff's "migraines were not at [sic] debilitating as she alleged." (Tr. 10).

Although there is some evidence that, at times, Plaintiff's symptoms were possibly severe enough to equal the requirements of Listing 11.02, the Court does not reweigh the evidence. *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003). Instead, the Court must determine whether there is substantial evidence to support the ALJ's conclusions. *Id.* In this case, there is substantial evidence that Plaintiff has not suffered sufficiently severe and frequent migraines for once a week for at least three months despite treatment to equal the requirements of Listing 11.02. The Court therefore finds that the ALJ did not err in failing to expressly analyze whether Plaintiff's headaches were medically equivalent to Listing 11.02.

### III.  CONCLUSION

Accordingly, the Court overrules Plaintiff's objection to the Report and Recommendation, and it is adopted in its entirety. ECF No. 18. Further, the findings of the ALJ are affirmed. Judgment will enter concurrently with this opinion.

**IT IS SO ORDERED**, this 30th day of September, 2020.

/s/ Susan O. Hickey  
Susan O. Hickey  
Chief United States District Judge